[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This action was brought by the plaintiff Outdoor Development Corporation (ODC) against Thomas Mihalov and Murphy, Inc., alleging, inter alia, breach of contract regarding a lease to allow ODC to construct and maintain an advertising sign along I-95 in Bridgeport. The matter, which was tried to the court, occurred in two phases: liability and damages.
After conducting the first phase of the trial, this court found for the plaintiff against Thomas Mihalov on one count of breach of contract. This court found no liability against Murphy, Inc. All parties then presented additional evidence in the damages phase of the case.
The court has previously found that Outdoor Development Corporation, a new company spinning off from an existing family business, properly contracted with the defendant Thomas Mihalov to place and maintain a large advertising billboard on Mihalov's real property near I-95. When the defendant was offered a better deal by Murphy, Inc., a competitor of ODC with whom Mihalov had previously done business, Mihalov breached the contract with ODC CT Page 15246 and leased the property to Murphy for such a sign.
The plaintiff asks the court to award it out-of-pocket expenses and projected future lost profits over at least twenty years of what had been a renewable contract of thirty years. The defendant Mihalov, joined by Murphy, claims that any such projection is too speculative, and that the court has insufficient evidence before it to award any such damages. In the alternative, the defendant claims that the figures on which the court should base an award of damages are ones that represent the net profit Murphy actually realized at the site from its own billboard, not figures anticipated by ODC based on a national model or on other billboard locations of ODC.
Outdoor Development Corporation was started by Bruce A. Barrett and his brother John A. Barrett to find and develop sites for billboards. The Barrett family had been in the outdoor advertising field since 1963 when Mr. Barrett's father founded Barrett Outdoor Communications (BOC). Members of the Barrett family decided in the summer of 1992 to allow BOC to continue in its role as the builder of the advertising structures, solicitor of sales for the advertising space, and manger of the billboards. The plaintiff corporation was specifically formed to find suitable real estate and to deal with the owner of the land in developing sites to be used by BOC.
The two companies are closely linked. Bruce Barrett is the president of both. They are operated very much as family businesses to provide income to a set of family members through flexible decision-making that does not involve arms-length transactions.
For example, in 1995, the decision was made to compensate the officers of ODC, an S corporation, in the sum of $96,000; and an overall loss for the year of $11,886 was reported to the IRS. The previous year — 1994 — and the subsequent year — 1996 — the corporation chose not to compensate its officers but reported modest profits instead.
Each year of its existence after 1992, ODC has paid a large annual sum to BOC as a non-lease or non-real estate cost, most properly characterized on ODC's 1996 tax return as a management fee. In 1993, this sum was $14,000 compared with gross receipts of $33,716. In 1994, the sum was $94,000 against gross receipts of $221,934. In 1995, it was $156,000 against $487,138. In 1996, CT Page 15247 it was $318,000 for gross receipts of $518,640. In 1997, it was $216,000 for gross receipts of $578,463.
Mr. Barrett testified, and credibly so, that the way the allocation of profit vs. loss, officer compensation vs. ordinary income, works between the two companies is that toward the end of the year, all of the involved family members get together to decide what makes the most sense from a financial and tax standpoint, and then the companies cut the relevant checks back and forth between themselves or to the individuals involved. This may make sense for the insiders in the closely held companies, but it significantly undercuts any weight that the court might otherwise choose to give to evidence from ODC about the way to project lost profits.
Rather the better and weightier evidence on the issue of damages was offered by Mihalov and Murphy, consisting not of projections but of calculations based on actual revenue and expenses of the sign that Murphy maintained on the Mihalov property. The court finds on the basis of all the evidence that it is more probable than not that an average of $5900 per year would have been cleared through the development of the Mihalov property for use of a highway bulletin sign by ODC had the breach of contract not occurred. The court further finds that the reasonable period for the projection of such a stream is five years, notwithstanding that the original term of the lease was for ten years. The evidence beyond five years regarding the continuation of profits from this particular site is too speculative to afford a proper basis for an award of damages beyond five years, given the competitive nature of the industry, the ongoing uncertainty regarding the defendant's continued ownership of the real estate,[1] and the disputes about zoning and permit issues.
The court's findings as to what is reasonably probable are made in full view of the teachings in the recent case of BeverlyHills Concepts, Inc. v. Schatz Schatz Ribicoff Kotkin,247 Conn. 48 (1998), decided after the close of the evidence in this case and the submission of briefs by counsel.[2] The case stands for the proposition that because of justifiable doubt about the success of new businesses, more specific evidence of the probable lost profits is required than when the claim is for harm to an established business. It also stands for the proposition that while the quantum of proof is still a preponderance of the evidence, the likelihood of future profits CT Page 15248 must be established with reasonable certainty.
Notwithstanding that Barrett family members had experience through BOC in the billboard business, the court finds that the spinoff of Bruce and John Barrett into the new corporation Outdoor Development Corporation was the establishment of a new business. The court further finds that the plaintiff has established the likelihood of future profits with reasonable certainty, even though the court rejects much of the plaintiff's evidence about how to calculate those losses. The measure of damages approved by our Supreme Court without reservation in lost business opportunity cases is that measure extrapolated from the experience of another entity conducting a virtually identical business at the same location. Id., 72-75; see also, WestportTaxi Service, Inc. v. Westport Transit District, 235 Conn. 1
(1995).[3]
There is evidence that out-of-pocket expenses related to the defendant's breach of contract amounted to $1093.20. The related corporation BOC paid these expenses, all in 1992. The plaintiff's tax return for 1992 reflects no reimbursement by the plaintiff for these expenses, and the subsequent tax returns are not sufficiently specific to allow the court to find that it is more probable than not that they were ever paid back by the plaintiff. Therefore the court finds that the plaintiff has failed to sustain its burden of proving damages related to any out-of-pocket expenses.
The court awards damages for lost profits of $29,500.[4]
It is so ordered.
Patty Jenkins Pittman, J.